UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA, | § | |
| --- | --- | --- |
| | § | |
| v. | § | NO. 3:12-CR-393-K |
| | § | |
| LEWIS GIPSON | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Lewis Gipson's Motion to Suppress Evidence & [sic] Memorandum of Law (Doc. No. 19). The Court conducted an evidentiary hearing on October 3, 2013. After careful review of the briefs and applicable law, as well as the testimony adduced at the hearing, the Court **GRANTS** the motion. Accordingly, all evidence obtained as a result of the October 10, 2012, traffic stop is hereby suppressed. This includes any statements made by Gipson during the stop, the firearm, and the ammunition.

I.    **Factual Background**

Defendant Lewis Gipson ("Gipson") was indicted and charged with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Gipson was a passenger in his own car around 2:20 a.m. on October 10, 2012. While patrolling a known drug area, Dallas Police Officers Roach and Candelaria were travelling northwest on Ash Lane. When they turned left onto Meyers Street, they observed Gipson's car on Meyers Street, approaching Oak Lane. The officers stopped Gipson's car

for failure to signal its intent to turn left onto Oak Lane at least 100 feet before turning. Officer Roach testified that Gipson made furtive gestures before the car stopped. As Officer Roach approached the passenger side of the vehicle, Gipson bent over at the waist and then quickly sat up again. Officer Roach observed a dark object under the passenger seat and removed Gipson from the vehicle. When Officer Roach searched Gipson's car he discovered a Smith & Wesson .32 Long Colt revolver ("the Gun") underneath the passenger seat where Gipson had been sitting.

## II. Analysis

Gipson asserts that no traffic violation occurred because the driver properly signaled his intention to turn in compliance with Tex. Transp. Code Ann. § 545.104 (West 2011). Because there was no traffic violation to support the stop, Gipson argues the Gun, the ammunition, and all other evidence obtained during the stop must be suppressed.

The Texas Transportation Code states that "[a]n operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." Tex. Transp. Code Ann. § 545.104(b). This is a criminal statute, and an offender may be arrested without a warrant for a violation. *Markey v. State*, 996 S.W.2d 226, 229 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Tex. Transp. Code Ann. § 542.401. As with any warrantless seizure, a traffic stop must be reasonable and supported by probable cause to believe a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). While this rule does not take into

account the subjective intent of a police officer conducting a search, the legal justification for the search must be objectively grounded. *United States v. Raney*, 633 F.3d 385, 390 (5th Cir. 2011) (per curiam) (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998)). Probable cause requires a particularized, reasonable ground for belief of guilt. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Simply put, if the alleged traffic violation that forms the basis for the stop was not actually a violation of state law, there is no objective basis for the stop. *Raney*, 633 F.3d at 390.

The exclusionary rule precludes the government from relying on illegally seized evidence. *United States v. Houltin*, 566 F.2d 1027, 1030 (5th Cir. 1978). The purpose of the exclusionary rule is to "deter unlawful police conduct." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2003). To avoid suppression, the Government must prove the reasonableness of a warrantless seizure by a preponderance of the evidence. *United States. v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000); *United States v. Berick*, 710 F.2d 1035, 1037 (5th Cir. 1983). Under this analysis, courts look at the facts surrounding the seizure and then decide if these historical facts amount to probable cause when viewed from the standpoint of an objectively reasonable police officer. *Pringle*, 540 U.S. at 370.

In an attempt to show the reasonableness of the stop and subsequent search, the Government offered the testimony of Officers Candelaria and Roach. At the hearing, Officer Candelaria testified that, in his opinion, Gipson's car did not signal 100 feet before beginning to turn. Officer Candelaria testified that the distance Gipson's car traveled was "no more than two car lengths," or approximately 32 feet. However, he also

testified that Gipson's car was almost a full city block away on Meyers Street when he first observed it. Additionally, he was unfamiliar with the length of the block and offered little more than a guess that the block was 60 yards long. Officer Roach also testified at the hearing, but admitted that he did not know how far Gipson's car travelled after it started signaling for a left turn. He could not know because he said he was looking at an area illuminated by another patrol car, not at Gipson's car.

In addition to these witnesses, the evidence at the hearing included a dashcam video from Officer Candelaria's patrol car offered by the Government. The Government suggests that the video corroborates Officer Candelaria's testimony that the vehicle did not signal at least 100 feet prior to turning. The Court does not agree. There are no landmarks to assist in determining the distance Gipson's car traveled. There are also visibility issues in that it was a dark night with little lighting, and the first seven seconds of the video are significantly washed out by the lights from the patrol car immediately in front of these officers. It is during this time that the Government alleges the traffic violation occurred. What little can be seen from this video is that Gipson's car is a significant distance down the road from Officer Candelaria's police cruiser. It is also apparent from the dashcam video that when the video begins, Officers Candelaria and Roach are just turning onto the street where Gipson's car was travelling. Less than one second into the video the brake lights and turn signal are already activated. Because the patrol car had just turned, the Court is unable to determine from the video if the turn signal was activated prior to this. Six seconds into the video, Gipson's vehicle finally

begins to turn. The Court cannot determine from the video how far Gipson's car travelled because the incident occurred at night, the lights from the other patrol car wash out the video, and there are no useful landmarks in the area. No evidence shows the speed of Gipson's car, gives measurements of the area in question, or provides any other guidance that would support a finding that the officers had probable cause to believe a traffic violation had occurred.

While not controlling, the Court finds a recent case from the San Antonio Court of Appeals helpful. That court was faced with an identical situation in *State v. Hneidy*, No. 04–12–00692-CR, 2013 WL 3279743 (Tex. App.—San Antonio June 26, 2013) (mem. op.). In that case, the trial court granted the defendant's motion to suppress evidence because it determined the police officer did not have probable cause to believe there had been a violation of the same statute at issue in the instant case. *Id.* at *1–2. In *Hneidy*, the State proffered testimony from the officer and the driver who called police to report the defendant as a suspected drunk driver, the officer's report, and the video from the officer's patrol car. *Id.* at *1. Despite the State's evidence, the trial court entered a finding of fact that the officer did not actually know how far the defendant had driven with her turn signal on before turning. *Id.* The San Antonio Court of Appeals affirmed the suppression order finding that "the record reveals an absence of any specific, articulable facts that would allow an officer to reasonably conclude that Appellee signaled for less than 100 feet before her turn." *Id.* at *4. Just as the officer's conclusionary testimony and inconclusive video was insufficient to establish probable cause that the

statute had been violated in *Hneidy*, identical evidence in this case fails to provide Officers Candelaria and Roach with a particularized, reasonable ground for belief that Gipson's car failed to signal as required by the Texas Transportation Code. Without a traffic violation justifying the stop, there was no objective basis for the stop. *See* Raney, 633 F.3d at 390. The Government has failed to carry its burden of proving there was probable cause to support the traffic stop. Therefore, all evidence obtained as a result of the October 10, 2010 traffic stop is suppressed.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Suppress. The Gun, the ammunition, and any statements Gibson made during the illegal stop are all suppressed.

**SO ORDERED**

Signed November 14th, 2013

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE